505 A.2d 1002

**COMMONWEALTH of Pennsylvania**

v.

**James SPARKS, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 5, 1985.

Filed March 5, 1986.

Louis A. Perez, Jr., Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Com., appellee.

Before WICKERSHAM, BROSKY and ROBERTS, JJ.

ROBERTS, Judge:

This is an appeal from a judgment of sentence after convictions for rape and aggravated assault. Appellant was sentenced to concurrent terms of imprisonment of five to ten years on the aggravated assault charge and eight to twenty years on the rape conviction. We affirm.

Viewed in the light most favorable to the Commonwealth as verdict winner, *Commonwealth v. Sudler*, 496 Pa. 295, 302, 436 A.2d 1376 (1981), the evidence establishes that the complaining witness, Dana Dangerfield, was acquainted with appellant for approximately two months before the events which led to the instant charges. On August 4, 1982, she accompanied him from Philadelphia to New Jersey to buy a car. While there, appellant also bought a watch for Ms. Dangerfield. Upon their return to Philadelphia, the witness accepted appellant's invitation to watch television at his apartment. After about ninety minutes, she rose to leave. Appellant turned off the television and advanced towards her. He bent her arm backwards and pulled her into his bedroom, saying, "I didn't buy the watch for nothing." In the bedroom, appellant pushed Ms. Dangerfield to the bed. She tried to kick him, but he punched her in the left jaw. It was later discovered that the jaw was broken. Then she tried to scratch him, but he kicked her in the head with his knee. Then he choked her and struck her in the left ribs. Finally, appellant had sexual intercourse with his now helpless victim.

■ Appellant contends that the trial court erred in failing to merge the crimes of rape and aggravated assault for sentencing purposes. In *Commonwealth v. Williams*, 344 Pa.Super. 108, 496 A.2d 31 (1985) (*en banc* ), this Court held that merger is required only when two prerequisites are met. First, the crimes must "necessarily involve" one another. According to *Williams, supra.*:

> When courts decide under the merger doctrine that two crimes "necessarily involve" one another, ... [i]t means that on the facts of the case the two crimes were so intimately bound up in the same wrongful act that as a *practical* matter proof of one crime necessarily proves the other, so that they must be treated as the same offense. *See, e.g., Commonwealth v. Jackson*, 271 Pa. Super. 131, 412 A.2d 610 (1979); *Commonwealth v. Richardson*, 232 Pa.Super. 123, 334 A.2d 700 (1975). If the same facts show that practically speaking there was only

one offense against the Commonwealth, then the defendant may be punished for only one offense despite the number of chargeable offenses arising out of the transaction. *See, e.g., Commonwealth v. Ayala,* 492 Pa. 418, 424 A.2d 1260 (1981); *Commonwealth v. Artis,* 294 Pa. Super. 276, 439 A.2d 1199 (1982); *Commonwealth v. Eberts,* 282 Pa.Super. 354, 422 A.2d 1154 (1980).

Second, the *Williams* court said, even if the two crimes "necessarily involve one another" they do not merge "if there are substantially different interests of the Commonwealth at stake and the defendant's act has injured each interest," *id.,* 344 Pa.Superior Ct. at 128, 496 A.2d at 42. To determine whether multiple offenses involve substantially different interests, the sentencing court must examine both the language of the particular statutes and the context in which each statute appears in the Crimes Code, 18 Pa.C.S.A., *id.* at 50.

■ We need not decide whether appellant's conduct which amounted to rape "necessarily involves" his aggravated assault because we conclude that appellant's conduct has clearly injured separate interests of the Commonwealth. Initially, we note that the gravamen of aggravated assault is the intentional infliction of serious bodily harm upon an individual,[1] while the essence of rape is sexual intercourse by forcible compulsion.[2]

1. The relevant portion of the aggravated assault statute, 18 Pa.C.S.A. § 2702 reads:
  (a) Offense defined.—A person is guilty of aggravated assault if he:
  (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.

2. The rape statute, 18 Pa.C.S.A. § 3121, provides:
  A person commits a felony of the first degree when he engages in sexual intercourse with another person not his spouse:
  (1) by forcible compulsion;
  (2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;
  (3) who is unconscious; or
  (4) who is so mentally deranged or deficient that such person is incapable of consent.

Obviously, both statutes protect against injuries resulting from intentional use of force.[3] But each proscription protects against different injuries. The statute prohibiting aggravated assault protects against serious bodily injury, which the legislature has defined as:

> Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. 18 Pa.C.S.A. § 2301.

The prohibition of rape protects against the shock, horror, and egregious invasion of privacy engendered by an act of forcible sexual intercourse. · Not only did appellant's actions here invade the victim's privacy and require her to suffer extreme humiliation, the evidence also established that they caused great physical injury to her jaw, ribs and neck. Cf. *Commonwealth v. Bullock*, 259 Pa.Super. 467, 473, 393 A.2d 921 (1978). As the *Williams* court wrote, "Once a defendant commits an original crime, he is not permitted to compound the injuries he inflicts and then escape liability under the guise that they were all done in the same criminal transaction," *id.*, 344 Pa.Superior Ct. at 127, 496 A.2d at 42. As such, there can be no dispute that the instant conduct injured substantially different interests of the Commonwealth.

We make no attempt to envision all of the possible fact situations involving the crimes of rape and aggravated assault. As Judge Cirillo wrote in *Williams*, "merger is rarely a rule to be mechanically applied; it usually demands careful scrutiny of the particular facts and charges on which the defendant is being sentenced," *supra* at 44. We hold that where, as here, the injury to the Commonwealth's interests in protecting individuals from serious bodily harm is clearly separable from the injury to other interests, the offenses need not merge.

Appellant next contends that the prosecutor, during her closing argument, improperly conveyed her personal belief

3. Indeed, both statutes are contained within Article B of the Pennsylvania Crimes Code, 18 Pa.Cons.Stat.Ann., Article B.

regarding Ms. Dangerfield's credibility. Appellant specifically objects to two statements, one in which the prosecutor said "[s]he was honest, she was credible and she was candid," and another where the prosecutor said, "[s]he was candid and honest, brutally honest."

It is well-settled that a prosecutor cannot express a personal belief regarding the evidence at trial, *Commonwealth v. Beasley*, 504 Pa. 485, 492, 475 A.2d 730 (1984), *Commonwealth v. Carey*, 313 Pa.Super. 20, 31, 459 A.2d 389 (1983). A prosecutor must limit closing argument to facts and legitimate inferences from the facts, *Commonwealth v. Brown*, 489 Pa. 285, 298, 414 A.2d 70 (1980). Such argument may include references to the credibility of witnesses, *Commonwealth v. Carey, supra*. Further, a lawyer's comments to a jury will not be reviewed in isolation, but will be assessed in the context in which they were spoken, *Commonwealth v. Carey, supra, Commonwealth v. Martin*, 307 Pa.Super. 118, 124–5, 452 A.2d 1066 (1982).

Here, placing the prosecutor's remarks in context reveals that they were not improper but were fair comments based on the evidence of record. The first statement reads:

> Try to remember, and I am sure you can, because you were all listening very attentively when Miss Daingerfield (sic) was on the stand, how she appeared. Forget about my questioning her for the moment, but how she appeared when Mr. Perez questioned her. Remember her, she was unflappable. Her story didn't change one iota. He could not impeach her. He could not destroy her. She was too real. She was honest, she was credible and she was candid.

Similarly, the propriety of the prosecutor's second statement is illuminated by the context in which it appears:

> Another thing I want to remember that she said, besides admitting that she might have been naive in staying there and a little idealistic about believing in him.

What did she say? Remember she said on the witness stand, "I trusted him." Who did she look at when she said, "I trusted him?" She looked at him, right at him. You can't beat a witness like that. She was candid and honest, brutally honest. By the way, all those responses were given, I noted, on cross-examination. That means Mr. Perez elicited them through his own questioning.

In both instances, the prosecutor is involved in an assessment of the credibility of the Commonwealth witness. She directed the jurors' memories to defense counsel's cross-examination, and urged them to recall the witness' demeanor on the stand. While we would never find a witness credible as a matter of law based on the intangibles she displays while testifying, neither can we say that those intangibles are irrelevant in the jury's determination of credibility. Cf. *Quercia v. United States*, 289 U.S. 466, 468, 53 S.Ct. 698, 698, 77 L.Ed. 1321 (1933). We conclude that the statements to which appellant has objected were not expressions of personal belief, but when read in context, were part of a larger argument based on the observable events at trial, and designed to persuade the jury that the witness deserved to be believed.

Next, appellant argues that the trial court abused its discretion by permitting the jury to take into the jury room, during deliberations, photographs taken of the victim shortly after the incident. After the jury had been deliberating for over an hour, it requested to see the seven photographs which were admitted as evidence: three depicted appellant's bedroom, two showed the scratches on the victim's neck, and two were frontal views of the victim. In particular, the jury wanted to see the scratches on the victim's neck. The court released the pictures of the scratches and of the scene, but refused to send out with the jury the frontal views after appellant's counsel objected and the forewoman announced that the jury did not need them.

Pa.R.Crim.P., Rule 1114 provides that "the jury may take with it such exhibits as the trial judge deems proper." Thus, whether an exhibit should be allowed to go out with the jury during deliberation is within the discretion

of the trial judge, *Commonwealth v. Merbah,* 270 Pa.Super. 190, 196, 411 A.2d 244 (1979). We find no abuse of that discretion on this record. The court was careful to release only those photographs necessary to aid the jury in its deliberations. Moreover, the photographs which were released were relevant, admitted into evidence, and requested by the jury. As such, the possibility that the court's decision would prejudice appellant was at best minimal.

Finally, appellant submits that the trial court's charge regarding reasonable doubt was erroneous because the court did not instruct the jury that it could convict appellant only if "each and every element has been proven to each juror's satisfaction beyond a reasonable doubt."

We are not troubled by the trial court's claimed omission. An appellate court assessing the charge of a trial court will review the charge as a whole, *Commonwealth v. Davis,* 331 Pa.Super. 285, 301–2, 480 A.2d 1035 (1984). The trial court instructed the jury that the Commonwealth must prove "each and every element of its charge or charges beyond a reasonable doubt." It also instructed that the verdict must be unanimous. Since the charge covered both the principles of unanimity and proof beyond a reasonable doubt, there was no error in the court's failure to merge the two into a single instruction.

Judgment of sentence affirmed.

BROSKY, J., filed a concurring opinion.

BROSKY, Judge, concurring:

Although I agree with the result reached by the majority, I disagree with the majority's analysis of the merger issue.[1]

This is not a case in which the crimes grew out of the same physical act. If it were, then discussion of whether or not appellant's conduct clearly injured separate interests of the Commonwealth would be appropriate. This is, rather, a

---

1. I also note a possible conflict between the majority opinion and *Commonwealth v. Kozrad,* 346 Pa.Super. 470, 499 A.2d 1096 (1985), in that *Kozrad* indicates that there are two tests for merger currently employed in Pennsylvania, while the majority opinion seems to indicate that there is only one test to be used in all instances.

case in which separate physical acts were involved: (1) punching the victim in the jaw, thereby breaking it, and (2) forcibly engaging in intercourse with the victim. In such a case as this, in which the crimes arise out of the same criminal transaction or episode, but not the same physical act, the relevant and sole inquiry is whether the two crimes necessarily involve one another, such that proof of the same facts will prove both crimes. *Commonwealth v. Williams,* 344 Pa.Super. 108, 496 A.2d 31 (1985).

In the instant case, the jury could have found appellant guilty of rape by engaging in sexual intercourse with the victim by threat of forcible compulsion or by forcible compulsion which did not cause serious bodily injury. It was not necessary for the jury to have found that appellant caused serious bodily injury to the victim in order to find him guilty of rape. On the other hand, the jury would have been justified in finding that appellant caused serious bodily injury to the victim (the broken jaw) without finding that he engaged in sexual intercourse with her. Utilizing this analysis then, I agree that the two offenses do not merge.[2]

---

**2.** The result reached by our court is inconsistent with the result reached by the court in *Commonwealth ex rel. Shaddock v. Ashe,* 340 Pa. 286, 17 A.2d 190 (1941); however, as noted in *Williams,* "the question of merger will often turn on an appraisal of the precise facts of the case." 344 Pa.Superior Ct. at 143, 496 A.2d at 50.